UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| AMF BRUNS OF AMERICA, L.P., <br><br> Plaintiff, <br><br> VALEDA CO., LLC, d.b.a, Q'STRAINT, and THE BRAUN CORPORATION, <br><br> Defendants. | Civil Action No. 24-CV-60116-WPD-PMH |

**AMENDED COMPLAINT**

Plaintiff AMF Bruns of America, L.P. ("AMF"), for its amended complaint against Defendants Valeda Co., LLC, d/b/a Q'Straint ("Q'Straint"), and The Braun Corporation, also known as "BraunAbility" ("Braun"), hereby states and alleges as follows:

**Nature of the Action**

This is an action for false or misleading advertising with claims brought under the Lanham Act 15 U.S.C. § 1125(a)(1)(B), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. § 501.202. Defendant Q'Straint advertises itself as the "world leader in wheelchair securement and safety systems." Defendant Braun is a major national manufacturer of wheelchair accessible vehicles. It has annual sales of close to $1 billion. Plaintiff AMF is a major manufacturer and distributor of wheelchair securement and safety systems. Defendants Q'Straint and Braun have engaged in false or misleading advertising and false or misleading statements injurious to AMF. As remedies for these injuries, AMF seeks corrective advertising, recovery of

1

the defendant's profits, treble damages, damage to good will, profits lost by the plaintiff, and attorney's fees.

## The Parties

1. Plaintiff AMF Bruns of America, L.P. ("AMF"), is a limited partnership organized and existing under the laws of Georgia and has a principal place of business at 1797 Georgetown Road, Hudson, Ohio 44236.

2. Defendant Valeda Co., LLC, d.b.a. Q'Straint, is a limited liability company organized and existing under the laws of the State of Delaware and has a principal place of business at 4031 NE 12th Terrace, Oakland Park, Florida 33334.

3. Defendant The Braun Corporation is a corporation organized under the laws of the State of Indiana with a principal place of business at 631 W. 11th Street, Winamac, Indiana 46996.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this matter as follows: (1) Federal Question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Acts of Congress relating to false or misleading advertising, namely, the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (2) Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367(a) in that the state law claims are so related to the claim in the action within the Court's original jurisdiction (the Lanham Act claim) and that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Q'Straint in that it is a citizen of the State of Florida given that its principal place of business is located at 4031 NE 12th Terrace, Oakland Park, Florida 33334. This Court has personal jurisdiction over Braun pursuant to the Long-Arm Statute of the State of Florida, F.S.A. § 49.193, in that it committed tortious acts in Florida and carries on a business in Florida directly or through Q'Straint. Specifically, it contributed to or

2

induced the tort of false or misleading advertising set forth herein, agreed with Q'Straint as to such advertising, and/or conspired with Q'Straint to engage in such advertising. The false or misleading advertising alleged herein bears on its face the names of both BraunAbility and Q'Straint. This false or misleading advertising bearing both names was provided by Q'Straint and Braun to their dealers and distributors nationwide and in the State of Florida. Also, Braun is at least a 50% owner of Q'Straint with a right of control such that Q'Straint is Braun's agent and as such personal jurisdiction over Q'Straint also satisfies personal jurisdiction over Braun.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that Defendant Q'Straint resides in this district and a substantial part of the events giving rise to the claims took place in this district.

## Factual Background

7. AMF is a manufacturer and distributor of wheel-chair tie-downs and occupant restraint systems ("WTORS"). It is one of the two largest such largest manufacturers with the other being the Defendant Q'Straint. As such, AMF and Q'Straint are direct competitors. Both advertise and sell their WTORS products nationwide in the United States.

8. **"Only Q'STRAINT."** The following false or misleading statement was contained in a flyer entitled "Chrysler Foldout Pricing," dated "2-9-23" that Braun and Q'Straint provided, presumably by electronic means, to the entire nationwide network of dealers and distributors in WTORS and related products, beginning on February 9, 2023, including all such dealers and distributors located in and/or doing business in the State of Florida:

> In order to maintain compliance with applicable Federal Motor Vehicle Safety Standards, *only Q'STRAINT* wheel-chair tie-downs and occupant restraints shall be used in conjunction with Q'STRAINT track or flooring. (Italics added).

9. The "Only Q'Straint" statement is false or misleading. First, as to the "Only Q'Straint" statement, there are no "Federal Motor Vehicle Safety Standards" ("FMVSS")

3

whatsoever for motor vehicles weighing less than 10,001 pounds having any installed wheelchair tie-downs and occupant restraints systems (again, WTORS). And the vast majority of what Q'Straint manufactures and sells are WTORS installed in motor vehicles weighing less than 10,001 pounds. The implication that any FMVSS applies to WTORS in general, let alone weighing less than 10,001 pounds, is simply false. Accordingly, where there are no such relevant FMVSS/WTORS, it is also false to say that *only* Q'STRAINT WTORS meet the requirements of the FMVSS.

10. Second, and obviously the "Only Q'Straint" language states or implies that "only Q'Straint" products meet the *non-existent* FMVSS/WTORS standard and therefore only Q'Straint WTORS are even lawful. Hence, all other WTORS - including those manufactured by AMF – are even illegal and cannot be used. This statement or implication is false or misleading because, again, no such relevant FMVSS/WTORS standard exists.

11. On information and belief, Braun and Q'Straint's dealers and distributors passed on the false or misleading "Only Q'Straint" statements to their customers.

12. **"Ensuring Compliance."** The "Ensuring Compliance" statement is false or misleading. The following false or misleading statement was contained in a flyer entitled "The Gold Standard Now Comes Standard," indicating "product enhancements to the upcoming MY24 BraunAbility WAV lineup," that Braun and Q'Straint provided, presumably by electronic means, to the entire nationwide network of dealers and distributors in WTORS and related products, beginning on September 26, 2023, including all those located in and/or doing business in the State of Florida:

> Our BraunAbility floor tracks are installed and *tested to exclusively* include Q'Straint Securement Systems, *ensuring compliance* with federal safety standards. (Italics added).

13. The "Ensuring Compliance" statement is false or misleading. First, again, as to the "Ensuring Compliance" statement, there is no relevant FMVSS/WTORS safety standard whatsoever. Thus, it cannot logically be possible that exclusive use of Q'Straint WTORS can "Ensure Compliance" with such a non-existent standard.

14. Second, again, the phrase *"tested to exclusively"* strongly implies that Q'Straint WTORS exclusively meets whatever federal safety standard, that is, FMVSS, may apply (although none does). And again, this implies that all other WTORS - including those manufactured by AMF – are even illegal and cannot be used. It's clear that this is false or misleading.

15. Third, to the extent that this flyer is not clear than an FMVSS is meant, and suggests ambiguously that Q'Straint WTORS exclusively meets voluntary, non-FMVSS, standards such as RESNA WC18 or UN/ECE ISO 10542, again the flyer would be false or misleading. AMF tests its WTORS products to both the RESNA WC18 and UN/ECE ISO 10542 standards, which AMF WTORS easily meet. Hence, it would be false or misleading to suggest that Q'Straint WTORS exclusively meet voluntary standards such as RESNA WC18 or UN/ECE ISO 10542. Hence, Braun and Q'Straint engage in more falsity.

16. On information and belief, Braun and Q'Straint's dealers and distributors passed on the false or misleading "Ensuring Compliance" statements to their customers. Also, as set forth below, by the false or misleading advertising Q'Straint and Braun greatly encouraged dealers and distributors to sell to consumers only Q'Straint's WTORS products and in part greatly discouraged dealers and distributors to sell to consumers AMF WTORS products.

17. In conclusion, the conduct of Braun and Q'Straint in issuing and circulating the advertising flyers containing the "Only Q'Straint" and "Ensuring Compliance" language and related phrases violates both the Lanham Act and FDUTPA. The language, distributed widely, is

5

contained in "commercial advertising and promotions." It states or implies, falsely, that Q'Straint WTORS only and exclusively meet particular standards, and are even required under such standards, when they are not. The language further states or implies that AMF WTORS do not meet such standards and are therefore even illegal and their use is forbidden, when this is all entirely false or misleading. As a result, the purpose of the false or misleading advertising was to encourage dealers and distributors to sell only Q'Straint WTORS products, while indicating Q'Straint WTORS were the only lawfully approved WTOTS products, and not to sell AMF products, as they were not lawfully approved, were illegal, and therefore could not lawfully be sold.

18. Further expanding on Braun and Q'Straint's purpose in engaging in the false or misleading advertising alleged herein, it was to damage AMF's sales and business as a direct competitor and to destroy its business reputation.

19. AMF is now entitled by law to all remedies available under the Lanham Act and FDUTPA including, "corrective advertising," an injunction against further false advertising, "recover[y of] the "defendant's profits," "treble damages," "damage to good will," "profits lost by the plaintiff," and attorney's fees.

## COUNT I:
## False Advertising In Violation of the Lanham Act

20. AMF incorporates by reference the allegations in all preceding paragraphs.

21. The U.S. Lanham Act, at 15 U.S.C. § 1125(a)(1)(B), provides that "[a]ny person who … in commercial advertising or promotion, misrepresents the nature, *characteristics, qualities,* or geographic origins of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action to any person who believes that he or she is likely to be damaged by such act." (Emphasis added).

6

22. A classic form of deceptive advertising as to a product's characteristics or qualities is to state or imply that it "is of a particular standard, quality, grade, style or model, if it is not." Uniform Laws Annotated, Consumer Sales Practices Act, § 3(b)(9); *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 114-115 (6th Cir. 1995) (manufacturer's publication and use of the false claim that its products met a certain standard when they did not, potentially constituted false advertising under both the Lanham Act and the Ohio Unfair and Deceptive Trade Practices Act).

23. "Implied falsity," and not just literal falsity, establishes liability for false or misleading advertising under the Lanham Act. *Beli v. Publix Super Markets, Inc.*, 982 F.3d 468, 479 (7th Cir. 2020) ("False advertising claims generally fall into two categories: literal falsity and implied falsity."). Hence, liability extends to more than just literal falsity.

24. The phrase "commercial advertising or promotion" is "not limited to published or broadcast materials…" and "requires merely 'some medium or means through which the defendant disseminated information to a particular class of consumers.'" *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012). Advertising flyers qualify as promotions. *See Thermal Design, Inc. v. Guardian Building Products, Inc.*, 2009 WL 1181327, *2 (E.D. Wis. 2009).

25. The false or misleading advertising should be intended to reach or does reach a substantial segment of the advertisement's audience.

26. All as set forth above, Q'Straint and Braun, by false or misleading advertising, have violated the Lanham Act.

27. The false or misleading advertising, as set forth above, reached all or substantially all of the entire nationwide network of dealers and distributors in WTORS and related products as Q'Straint and Braun had intended, and had a material effect on the WTORS purchasing decisions of such dealers and distributor. On information and belief, such dealers and distributors also

passed on such false or misleading advertising to their ultimate consumers which also had a material effect on the WTORS products ultimate consumers purchased.

28. As set forth above, the false or misleading advertising actually deceived or had the capacity to deceive and was likely to deceive the entire nationwide network of dealers and distributors in WTORS and related products. On information and belief, such dealers and distributors also passed on such false or misleading advertising to all or substantially all of their ultimate consumers which also had a material effect on the WTORS products such ultimate consumers purchased.

29. As set forth above, the misrepresented products, effecting the entire nationwide networks of dealer and distributors in WTORS and related products, affect interstate and nationwide commerce.

30. Remedies under the Lanham Act include "corrective advertising," which the court can require defendants to perform and pay for, an injunction against further false or misleading advertising, "recover[y of] the "defendant's profits," "treble damages," "damage to good will," and "profits lost by the plaintiff." J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 27:43 (5th ed. Dec. 2023 update). Also recoverable under the Lanham Act in some circumstances are the plaintiff's attorney's fees.

31. As a result of the foregoing, AMF has been damaged by Defendants' violations of the Lanham Act in an amount to be established at trial.

**COUNT II:**
**Contributory False Advertising**

32. AMF incorporates by reference the allegations in all preceding paragraphs.

33. As set forth above, Q'Straint has directly engaged in false or misleading advertising.

34. As set forth above, Braun contributed to that false or misleading advertising either by knowingly inducing or causing that conduct, and/or by materially participating in it.

35. As a result of the foregoing, AMF has been damaged by Braun's contributory false advertising in an amount to be established at trial.

## COUNT III:
## Civil Conspiracy to Commit False Advertising

36. AMF incorporates by reference the allegations in all preceding paragraphs.

37. As set forth above, Q'Straint and Braun had an agreement to engage in the false or misleading advertising in that both their names appear on such advertising.

38. Their agreement was to engage in false or misleading advertising in violation of the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act because, as set forth above, they engaged in false and misleading advertising together on the same written documents constituting the advertising.

39. And, as set forth above, they engaged in an overt act in pursuance of the conspiracy by distributing and promoting the false or misleading advertising to their dealer and distributor network nationwide.

40. As a result of the foregoing, AMF has been damaged by Q'Straint and Braun's civil conspiracy in an amount to be established at trial.

## COUNT IV:
## False Advertising In Violation of the
## Florida Deceptive and Unfair Trade Practices Act

41. AMF incorporates by reference the allegations in all preceding paragraphs.

42. AMF is entitled to invoke the protections of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The FDUTPA applies to Q'Straint located in Florida and to Braun

directly and by contributing and inducing false or misleading advertising and by conspiring to engage in false or misleading advertising, all causing injury in Florida.

43. FDUTPA protects "business enterprises from those who engage in … deceptive or unfair acts or practices in the conduct of any trade or commerce." F.S.A. § 501.202.

44. Plaintiffs in such actions can obtain injunctions against the wrongful conduct, as well as recover their actual damages and attorney's fees. F.S.A. §§ 501.211 ("enjoin," "actual damages"), and 501.2105 ("attorney's fees").

45. As set forth above, Braun contributed to the false or misleading advertising either by knowingly inducing or causing that conduct, and/or by materially participating in it.

46. As set forth above, Braun and Q'Straint engaged in an overt act in pursuance of the conspiracy by distributing and promoting the false or misleading advertising to their dealer and distributor network nationwide.

47. As a result of the foregoing, AMF has been damaged by Q'Straint and Braun's violations of the FDUTPA in amount to be established at trial.

### Request for Relief

AMF respectfully requests that the Court award the following relief:

(1) Award judgment under Count I based on the Lanham Act in favor of AMF and against Valeda Co., LLC, d/b/a Q'Straint, and The Braun Corporation for recovery of the defendant's profits, treble damages, damage to good will, profits lost by the plaintiff, and attorney's fees;

(2) Award judgment under Count II based on induced false advertising in favor of AMF and against The Braun Corporation for recovery of the defendant's profits, treble damages, damage to good will, profits lost by the plaintiff, and attorney's fees;

(3) Award judgment under Count III based on civil conspiracy in favor of AMF and against Valeda Co., LLC, d/b/a Q'Straint, and The Braun Corporation for recovery of the defendant's profits, treble damages, damage to good will, profits lost by the plaintiff, and attorney's fees;

(4) Award judgment under Count IV based on the Florida Deceptive and Unfair Trade Practices Act in favor of AMF and against Valeda Co., LLC, d/b/a Q'Straint, and The Braun Corporation for defendant's profits, treble damages, damage to good will, profits lost by the plaintiff, and attorney's fees.

(5) Issue an order requiring Valeda Co., LLC, d/b/a. Q'Straint, and The Braun Corporation to publish sufficient corrective advertising, to be approved in advance by AMF, retracting and correcting all the false or misleading statements and implications contained in the "Only Q'Straint" and "Ensuring Compliance" advertising flyers referred to above, and that such retraction must be widely published and circulated and to take place at the earliest possible time; and

(6) Award such other and further relief to AMF as the Court deems just and equitable.

### Demand for Jury Trial

Plaintiff AMF hereby demands a jury trial on all issues so triable.

AMF BRUNS OF AMERICA, L.P.
By its attorneys,

*/s/ Michael C. Gilleran*
Michael C. Gilleran (Mass. BBO No. 192210)
Pro hac vice to be filed
michael.gilleran@fisherbroyles.com
FISHERBROYLES, LLP
75 State Street, Suite 100, PMB 4418
Boston, Massachusetts 02109

Case 0:24-cv-60116-WPD  Document 7  Entered on FLSD Docket 01/29/2024  Page 12 of 12

Direct: 781.489.5680
Mobile: 339.237.1384

*/s/ Robert T. Wright, Jr.*
Robert T. Wright, Jr.
robert.wright@fisherbroyles.com
FISHERBROYLES, LLP
199 E. Flagler, Suite 500
Miami, Florida 33131
Direct: 305.775.8309

Dated: January 26, 2024